IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **HITACHI KOKI CO., LTD.,** | |
| **Plaintiff,** | |
| v. | 1:09-cv-3308-WSD |
| **TECHTRONIC INDUSTRIES CO. LTD. et al.,** | |
| **Defendant.** | |

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Dismiss Count I of the Complaint and Defendants' Counterclaims [79] ("Motion to Dismiss") and Defendants' Motion for Summary Judgment [83]. Also before the Court are Plaintiff's Motion to Stay Summary Judgment Briefing and Further Proceedings Pending Decision on Motion to Dismiss [84] ("Motion to Stay"), Plaintiff's Motion to Strike the Brandon Verbrugge Declaration and a Paragraph of the Jessica Polakowski Declaration [86] ("Motion to Strike"), and Plaintiff's Motion for a Continuance of Discovery Under Fed. R. Civ. P. 56(d) [89] ("Motion for Additional Discovery").

## I. BACKGROUND

### A. Procedural History

On November 24, 2009, Plaintiff Hitachi Koki Co., Ltd. ("Plaintiff") filed this patent infringement action against Defendants Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World Technologies, Inc., OWT Industries, Inc., Milwaukee Electric Tool Corporation, and Ryobi Technologies, Inc. (collectively, "Defendants"). In its Amended Complaint [68], Plaintiff alleges that Defendants' products infringe four (4) of Plaintiffs' patents related to power tools and miter saws, including, U.S. Patent No. 7,521,892 ("the '892 patent") (Count I). Defendants allege, as an affirmative defense, that the '892 patent is invalid. (Answer [71].) Defendants also assert a counterclaim seeking, among other things, a declaratory judgment that the '892 patent is invalid. (Id.)

On March 23, 2012, Plaintiff filed its Motion to Dismiss [79] seeking (1) a voluntary dismissal of Count I, with prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure, and (2) a dismissal, pursuant to Rule 12(b)(1), of Defendants' counterclaims asserting invalidity of the '892 patent. The basis for Plaintiff's motion to dismiss Defendants' invalidity counterclaim is that Plaintiff unilaterally offered a covenant not to sue Defendants and this covenant removes

any "case or controversy" between the parties on Defendants' '892 patent invalidity counterclaim.

On May 4, 2012, Defendants filed their Motion for Summary Judgment [83] on their affirmative defense and counterclaim based on invalidity of the '892 patent. Defendants argue that the '892 patent is "obvious" under 35 U.S.C. § 103.

On May 10, 2012, Plaintiff filed its Motion to Stay [84] proceedings on Defendants' Motion for Summary Judgment pending the Court's ruling on Plaintiff's Motion to Dismiss. On May 29, 2012, Plaintiff filed its Motion to Strike [86] declarations submitted in support of Defendants' Motion for Summary Judgment. On May 29, 2012, Plaintiff also filed its Motion for Additional Discovery [89] seeking an order, pursuant to Rule 56(d), deferring a ruling on Defendants' Motion for Summary Judgment to allow Plaintiff additional discovery.

B.   Facts

The '892 patent relates to the use of lithium-ion batteries as the power source in cordless power tools. (Defs.' Resp. Pl.'s SAMF [94-1] ¶ 1.) The patent addresses "overcurrent," or a level of current that is too high for normal operation of a lithium-ion battery-powered tool. (See id. ¶¶ 4–5, 16; Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶¶ 1–2, 4–5.) Overcurrent is damaging to, and shortens the life cycle

3

of, lithium-ion batteries, but it is necessary generally for short periods of time in certain situations, including when the power tool is first turned on and when the tool temporarily locks during operation (e.g., a drill bit jams). (See Defs.' Resp. Pl.'s SAMF [94-1] ¶¶ 8, 13–16; Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶¶ 1–2, 4–6.)

The '892 patent discloses an invention that purports to address overcurrent in lithium-ion battery-powered tools by permitting overcurrent when a power tool is turned on and for short periods during the tool's operation, but prohibiting persistent overcurrent during operation. (See Defs.' Resp. Pl.'s SAMF [94-1] ¶ 16; Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶ 9.) The invention includes a controller, or circuitry, and an algorithm, or logic flow. (See Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶ 10; see also '892 Patent [83-5].) The controller measures and times the current flow. (See Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶¶ 10–22.) If the level of current exceeds a predetermined threshold for a predetermined period of time, the algorithm requires the controller to shut off power. (See id.) So long as the current stays below the predetermined threshold or exceeds the threshold for periods less than the predetermined period of time, power continues to flow through the motor. (See id.)

The '892 patent was filed on April 4, 2006, and it claims priority to a Japanese patent application filed on April 4, 2005.  (Id. ¶ 8.)  The '892 patent was issued on April 21, 2009.  ('892 Patent [83-5].)  It has eleven (11) claims.  (Id.)

The '892 patent prior art includes U.S. Patent No. 6,388,426 ("the '426 patent"), filed on September 11, 2000, and U.S. Patent Application Publication No. US 2003/0096158 ("the '158 publication"), filed on November 21, 2002.  The '426 patent discloses an invention that relates to (1) a battery power source device that protects a rechargeable battery from excessive current, or a state of excessive discharge, and (2) an electromotive device that uses such a battery power source device.  (Defs.' Reply Pl.'s Resp. SUMF [94-2] ¶ 23.)  The '158 publication discloses an invention that relates to an over-discharge prevention control in which a switching control is used between a battery and a cordless power tool to stop driving the tool when the battery voltage equals, or falls below, a predetermined level.  (Id. ¶ 25.)

Defendants generally contend that the '426 patent discloses the algorithm, or logic, claimed in the '892 patent and that the '158 publication discloses the controller, or circuitry, claimed in the '892 patent.  Defendants submitted charts, prepared by their attorneys, listing the claims of the '892 patent and the disclosures of the '426 patent and '158 publication.  (See Defs.' Exs. 5–19 [83-9 to 83-23].)

These charts, Defendants argue, show that every element of the '892 patent is disclosed in either the '426 patent or the '158 publication.

In their briefs, Defendants did not address the relevant level of ordinary skill in the art to evaluate whether the '426 patent or the '158 publication disclosed the invention that is the subject of the '892 patent. Defendants also did not submit any evidence pertaining to the level of ordinary skill in the art to show whether the subject matter of the patent was obvious at the time of the invention.[1] Plaintiff submitted reports authored by its and Defendants' respective experts to show a dispute as to the level of ordinary skill in the art. Plaintiff's expert states the level of ordinary skill is as follows:

> [T]he level of skill of such a person in 2005 would have been someone with a Master's Degree in chemistry, chemical engineering, or electrical engineering focusing on battery technology and applications, or a Bachelor's Degree in chemistry, chemical engineering, or electrical engineering and three to five years experience in battery applications.

(See Defs.' Resp. Pl.'s SAMF [94-1] ¶ 25.) Defendants' expert states the level of ordinary skill is as follows:

> [A] person of ordinary skill in the art for the '892 Patent would have a Bachelor's degree in Electrical Engineering and a year of experience

---

[1] Defendants state that the level of ordinary skill in the art is not material here because the skill levels with respect to the '892 patent and the prior art are the same.

designing current measurement and control circuitry and related algorithms, either for cordless power tools or other related applications.

(Id. ¶ 26.)

## II. PLAINTIFF'S MOTION TO DISMISS

### A. Rule 41(a) Voluntary Dismissal of Plaintiff's Count I

Plaintiff first seeks the voluntary dismissal with prejudice of its claim, in Count I of the Amended Complaint, for infringement of the '892 patent. Rule 41(a) provides that, after a defendant has filed an answer and in the absence of all parties' consent, "an *action* may be dismissed at the plaintiff's request only by court order." Fed. R. Civ. P. 41(a)(2) (emphasis added). Courts uniformly have held that Rule 41(a) does not permit the dismissal of individual claims from a multi-claim action but only authorizes the dismissal of an entire action. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2362, at 413–14 & n.13 (3d ed. 2008 & Supp. 2012) (collecting cases) ("Rule 41(a) is applicable only to the voluntary dismissal of all the claims in an action."); see also Gronholz v. Sears, Roebuck & Co., 836 F.2d 515, 517–18 (Fed. Cir. 1987); Exxon Corp. v. Md. Cas. Co., 599 F.2d 659, 662 (5th Cir. 1979). The Court cannot grant

Plaintiff a voluntary dismissal of Count I of the Amended Complaint, and Plaintiff's Motion to Dismiss on this ground is denied.[2]

B.   Rule 12(b)(1) Dismissal of Counterclaim

Plaintiff next moves for the dismissal of Defendants' counterclaim for a declaratory judgment on the invalidity of the '892 patent. Plaintiff asserts that it has offered Defendants a covenant not to sue, which deprives the Court of subject matter jurisdiction over the counterclaim.

A party asserting a claim under the Declaratory Judgment Act ("DJA") must demonstrate that the claim presents an "actual controversy" within the jurisdiction of the Court. See 28 U.S.C. § 2201(a) ("In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."); see also Dow Jones & Co. v. Ablaise Ltd., 606 F.3d 1338, 1345 (Fed. Cir. 2010) ("Subject matter jurisdiction in a declaratory judgment suit depends upon the

---

[2] As many authorities have explained, the proper way for a plaintiff to remove a single claim is to move to amend the complaint under Rule 15. See, e.g., 9 Wright & Miller, supra, § 2362, at 414. Because Plaintiff here did not file a motion to amend, and the Court did not receive briefing on such a motion, which has a different standard than a Rule 41(a) motion, the Court does not consider whether an amendment is proper under Rule 15.

existence of a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment . . . ." (internal quotation omitted)).  The Federal Circuit has held that a covenant not to sue for patent infringement may "divest[] the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties."  Dow Jones, 606 F.3d at 1345.  A covenant not to sue of proper scope removes the controversy as between particular parties because the party executing the covenant is agreeing not to assert a claim under the patent against the beneficiary of the covenant, thus eliminating the possibility the beneficiary will have asserted against it a claim based on the patent.  See id.; see also Already, LLC v. Nike, Inc., 133 S. Ct. 721, 726–27 (2013).  "Whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."  Revolution Eyewear, Inc. v. Aspex Eyewear, Inc., 556 F.3d 1294, 1297 (Fed. Cir. 2009).  The proponent of the covenant has the burden to show that, because of the covenant, "it 'could not reasonably be expected' to resume its enforcement efforts against" the opposing party.  Already, 133 S. Ct. at 727 (quoting Friends of the Earth, Inc. v. Laidlaw Envntl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000)).

     Plaintiff asserts that it has offered Defendants the following covenant:

> Hitachi Koki Co., Ltd. covenants not to sue Techtronic Industries Co. Ltd., Techtronic Industries North America, Inc., One World Technologies Inc., OWT Industries, Inc., Milwaukee Electric Tool Corporation, RYOBI Technologies, Inc. and any currently owned subsidiary of Techtronic Industries Co. Ltd. (collectively "TTI") for infringement of U.S. Patent No. 7,521,892 ("the '892 patent") based on TTI's manufacture, importation, use, sale, and/or offer for sale, of products on or before March 13, 2012. Hitachi Koki Co., Ltd. covenants not to sue TTI for infringement of the '892 patent based on TTI's future manufacture, importation, use, sale, and/or offer for sale, of any and all products being offered for sale by TTI on March 13, 2012 as well as any products that are the same as or substantially identical to a product being offered for sale by TTI on March 13, 2012. Hitachi Koki covenants not to sue or otherwise seek to hold TTi's [sic] customers liable based upon the importation, distribution, use sale and offering for sale of the products that are subject to this covenant not sue for the infringement of the '892 patent.

(Pl.'s Br. [79-1] at 6.)[3]  This covenant protects Defendants from an action for any alleged infringement of the '892 patent based on products manufactured, imported, used, sold, or offered for sale on or before March 13, 2012.  The covenant also protects Defendants for future manufacture, importation, use, sale, or offer for sale of products being offered for sale on March 13, 2012, to include the products that

---

[3] The text of the covenant is contained only in Plaintiff's brief.  Plaintiff did not submit an affidavit or other evidence showing that it offered this covenant to Defendants or the form in which it was offered.  Defendants contend that they were not aware of the covenant until the filing of Plaintiff's Motion to Dimiss.  If the covenant was not formally executed and delivered to Defendants, the Court finds that a covenant was not issued in this case and thus there exists a case or controversy regarding validity of the '892 patent.  On this ground alone, Plaintiff's motion to dismiss would be required to be denied.

are "the same as or substantially identical to a product being offered for sale . . . on March 13, 2012."

The parties dispute the meaning of the second part of the covenant. Defendants interpret the clause as applying only to currently existing products. Plaintiff interprets it as applying to future products. Even accepting Plaintiff's interpretation as correct, Defendants object that the covenant does not apply to future products that are not "the same as or substantially identical to" products existing as of March 13, 2012. Defendants contend, based on the declaration of one of their employees, that on March 14, 2012 they introduced a new product, the M12™ Band Saw, that uses the disputed '892 patent technology. (See Decl. E. Miller [80-1] ¶¶ 6, 9.) Defendants' employee states this new product is not "the same as or substantially identical to" any of Defendants' products existing as of March 13, 2012. (See id.) She further states that Defendants have concrete plans to launch, throughout 2012, numerous additional products, all of which use the disputed '892 patent technology and none of which is "the same as or substantially identical to" any of Defendants' products existing as of March 13, 2012. (See id. ¶¶ 7–8, 10–12.)

Plaintiff's interpretation of the covenant is inconsistent with the plain language of the covenant, or the covenant is at least ambiguous. The plain

11

language of the covenant states that the covenant applies only to *products manufactured, imported, used, sold, or offered for sale on or before March 13, 2012* and *products* that are the same or substantially identical to those products being manufactured, imported, used, sold, or offered for sale in the future. It does *not* cover any product manufactured, imported, used, sold, or offered for sale using the '892 patent technology that is not substantially similar to Defendants' products as they existed on March 13, 2012. That is, the covenant does not apply to specific potentially-infringing products that Defendants have introduced or will introduce after March 13, 2012. In view of this limitation in the scope of the covenant, the Court finds that the covenant, in its current form, does not eliminate the parties' '892 patent controversy.[4]  See Revolution Eyewear, 556 F.3d at 1299 (holding that a covenant not to sue that did not extend to future sales was insufficient to eliminate the patent controversy between the parties); see also Already, 133 S. Ct. at 728 (holding that a covenant not to sue was sufficient because it was "unconditional" and because opponent did not present any evidence of its intention to develop a product that would "arguably" not fall within the covenant).

---

[4] Defendants contend that Plaintiff did not discuss the covenant with them prior to the filing of the Motion to Dismiss. The Court recognizes that a more comprehensive covenant scope could remove the threat of litigation against Defendants for infringement of the '892 patent. The covenant here simply is not that covenant.

The Court having denied Plaintiff's motion for a voluntary dismissal of Count I and, as a result, Plaintiff's '892 patent infringement claim still pending, for now there remains a "controversy" between the parties.  See Fort James Corp. v. Solo Cup Co., 412 F.3d 1340, 1347 (Fed. Cir. 2005) ("[A] case or controversy adequate to support jurisdiction of a declaratory judgment counterclaim necessarily exists if a party has actually been charged with infringement of a patent.").  For these reasons, Plaintiff's Motion to Dismiss on this ground is denied.

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Parties "asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact.  See Novartis Corp. v. Ben

13

Venue Labs., Inc., 271 F.3d 1043, 1046 (Fed. Cir. 2001).  Once the moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Id. "Where a movant has supported its motion with affidavits or other evidence which, unopposed, would establish its right to judgment, the non-movant may not rest upon general denials in its pleadings or otherwise, but must proffer countering evidence sufficient to create a genuine factual dispute."  Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562 (Fed. Cir. 1987).

     The Court must view all evidence in the light most favorable to the party opposing the motion and must draw all inferences in favor of the non-movant.  L.D. Kichler Co. v. Davoil, Inc., 192 F.3d 1349, 1351 (Fed. Cir.1999).  "Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ."  Allied Colloids Inc. v. Am. Cyanamid Co., 64 F.3d 1570, 1575 (Fed. Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.   Analysis

A patent is invalid "if the differences between the [claimed] subject matter . . . and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains."  35 U.S.C. § 103(a) (2006).  To invalidate a patent as obvious, the party challenging the patent has the burden to demonstrate "by clear and convincing evidence that a skilled artisan would have had reason to combine the teaching of the prior art references to achieve the claimed invention, and that the skilled artisan would have had a reasonable expectation of success from doing so."  Eurand, Inc. v. Mylan Pharm. Inc. (In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litig.), 676 F.3d 1063, 1068–69 (Fed. Cir. 2012) (quoting Procter & Gamble Co. v. Teva Pharms. USA, Inc., 566 F.3d 989, 994 (Fed.Cir.2009)).

Obviousness is a determination of law based on underlying determinations of fact.  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 655 F.3d 1364, 1374 (Fed. Cir. 2011) (citing Geo M. Martin Co. v. Alliance Mach. Sys. Int'l, 618 F.3d 1294, 1300 (Fed.Cir.2010)).  These factual determinations include the Graham factors: (1) the scope and content of the prior art, (2) the level of ordinary skill in the art, (3) the differences between the claimed invention and the prior art, and

15

(4) secondary considerations of nonobviousness.  Id. (citing KSR Int'l Co. v. Teleflex, Inc., 550 U.S. 398, 406 (2007)); see also Graham v. John Deere Co., 383 U.S. 1, 17–18 (1966).  A "district court must make Graham findings before invalidating a patent for obviousness." Ruiz v. A.B. Chance Co., 234 F.3d 654, 663 (Fed. Cir. 2000); see also Eurand, 676 F.3d at 1079–80 (holding that a patent cannot be held obvious until the court weighs all of the factors).

Defendants submitted evidence of the '426 patent and '158 publication as prior art.  In prepared charts, Defendants list the limitations of the claims of the '896 patent and the teachings of the '426 patent and '158 publication to show that each limitation of each asserted claim of the '896 patent is disclosed in the prior art.  Defendants did not submit any evidence of the level of ordinary skill in the art necessary to show the '892 patent invention was obvious.  On the basis of their charts alone, Defendants argue that "[o]ne of ordinary skill in the art would understand, merely from the teachings in the prior art references themselves, that [combining the teachings of the '426 patent and '158 publication] would yield a predictable result—the '892 patent."  (Defs.' Br. [83-1] at 22.)

Assuming, as Defendants contend, that the '426 patent and '158 publication disclose all of the elements of the '896 patent, the Court is unable to conclude that the '892 patent is obvious because the record does not contain any evidence, let

alone "clear and convincing evidence," of whether the combination of the '426 patent and '158 publication is obvious to one of ordinary skill in the art. "Whether prior art invalidates a patent claim as obvious is determined *from the perspective of one of ordinary skill in the art*." Star Scientific, 655 F.3d at 1374 (emphasis added); see also KSR, 550 U.S. at 420 ("The question is not whether the combination was obvious to the patentee but whether the combination was obvious to a person with ordinary skill in the art."). "Through the lens of one of ordinary skill in the art, even when all claim limitations are found in prior art references, the fact-finder must not only determine what the prior art teaches, but whether prior art teaches away from the claimed invention and whether there is a motivation to combine teachings from separate references." Star Scientific, 655 F.3d at 1374–75.

Defendants contend that evidence of the level of ordinary skill in the art is not necessary here because "the '892 patent and the two prior art references are all indisputably in the same field of art." (Defs.' Br. [83-1] at 13.) This argument misses the purpose of requiring evidence of the level of ordinary skill in the art. Without such evidence, the Court cannot make the required Graham finding of the level of ordinary skill and cannot evaluate Defendants' obviousness claim "from the perspective of one of ordinary skill in the art." See Innovention Toys, LLC v.

17

MGA Entm't, Inc., 637 F.3d 1314, 1323 (Fed. Cir. 2011) (holding that a "determination of obviousness requires a factual finding of the level of ordinary skill in the art" and that a district court's evaluation of obviousness in the absence of evidence of the level of ordinary skill constitutes error);[5] cf. Rosco, Inc. v. Mirror Lite Co., 304 F.3d 1373, 1381 (Fed. Cir. 2002) (reversing the district court's finding of inherency, which requires a determination from the perspective of one of ordinary skill in the art, because the record contained no evidence of how a person of ordinary skill in the art would have read the subject patents). What also is clear is that the Court cannot evaluate Defendants' generalized statement that the '892 patent and the prior art references are in the same field of art without some factual basis to reach that conclusion and without evidence of what level of

---

[5] In Innovention Toys, the Federal Circuit noted that, in some circumstances, a district court's failure to make factual findings regarding the level of ordinary skill in the art, although "error," may not constitute "reversible error." 637 F.3d at 1323. The court stated, as an example, that "no reversal is necessary where a district court makes a determination that an invention would have been obvious to one having the lowest level of skill, i.e., a layperson . . . ." Id. Defendants have not asked the Court to consider their evidence of obviousness from the perspective of a layperson, and the Court declines to do so. Although the parties dispute the proper level of ordinary skill, both parties have argued in other submissions that the level of skill is greater than that of a layperson. (See Defs.' Resp. Pl.'s SAMF [94-1] ¶¶ 24–26.) On this record, a failure to make findings of the level of skill would constitute "reversible error." See id. at 1323–24 (reversing summary judgment because, in the absence of evidence of the level of ordinary skill in the art, the district court applied a layperson standard even though the parties agreed that the level of skill was higher).

skill is required to make a finding of obviousness. The Court agrees with the parties that someone with more than a layperson's knowledge is required here to evaluate what the prior art discloses. Defendants Motion for Summary Judgment is denied. See <u>Baden Sports, Inc. v. Molten</u>, No. 06-cv-00210, 2007 WL 1526344, at *2–3 (W.D. Wash. May 23, 2007) (denying summary judgment on obviousness because the movant "provided no evidence about the level of ordinary skill," preventing the court from making its required factual findings); see also <u>West v. Jewelry Innovations, Inc.</u>, No. C 07-1812, 2009 WL 1010848, at *5 (N.D. Cal. Apr. 14, 2009); <u>Fargo Elecs., Inc. v. Iris, Ltd.</u>, No. 01-1017, 2006 WL 3839931, at *5 (D. Minn. Dec. 29, 2006).[6]

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Dismiss Count I of the Complaint and Defendants' Counterclaims [79] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [83] is **DENIED**.

---

[6] Because the Court denies Defendants' Motion for Summary Judgment, Plaintiff's Motion to Stay, Motion to Strike, and Motion for Additional Discovery are denied as moot.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay Summary Judgment Briefing and Further Proceedings Pending Decision on Motion to Dismiss [84], Plaintiff's Motion to Strike the Brandon Verbrugge Declaration and a Paragraph of the Jessica Polakowski Declaration [86], and Plaintiff's Motion for a Continuance of Discovery Under Fed. R. Civ. P. 56(d) [89] are **DENIED AS MOOT**.

**SO ORDERED** this 6th day of February, 2013.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE